1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WILLIAM BRAUN,

                    Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration,

                    Defendant.

CASE NO.  C10-5214-RBL-JRC

REPORT AND RECOMMENDATION

Noted for January 28**,** 2011

This matter has been referred to Magistrate Judge J. Richard Creatura pursuant to 28

U.S.C. § 636(b)(1) and Local Magistrates Rule MJR 4(a)(4); and, as authorized by Mathews,

Secretary of  H.E.W. v. Weber, 423 U.S. 261, 271-72 (1976).  This matter has been fully briefed.

(See ECF Nos. 11, 16, 17.)

After considering and reviewing the record, the undersigned finds that the ALJ erred by

failing to consider properly the lay evidence. The undersigned recommends that this matter be

reversed and remanded for further consideration by the Administration.

FACTUAL BACKGROUND

Plaintiff was born on November 17, 1964 and was 40 years old on his alleged disability

onset date. (Tr. 10, 15, 114.) Plaintiff testified that he has a college degree. (Tr. 25.) Plaintiff has

past relevant work as an airline baggage handler. (Tr. 15, 25-26.) After working for Alaska

Airlines for twenty-two years, plaintiff's "employer laid off [his] entire work group, all 570

workers . . . .  and [he] got nearly $60,000 as a severance package." (Tr. 41.) Plaintiff also

received a payout for vacation pay and "hundreds of hours of sick leave time that [he]'d saved

up." (Id.) During the stress of the layoffs at his work, in January, 2005, plaintiff alleges that he

developed disabling hives. (See Tr. 12, 41-44.) Plaintiff testified that subsequently, from June,

2007 until September, 2007, he "was still having hives  . . . .  but they were very mild, and I

was still taking medication until September of '07, but . . . .  the swelling was less." (Tr. 44.)

PROCEDURAL HISTORY

Plaintiff filed applications for social security disability insurance benefits on January 18,

2007, when he was 42 years old. (Tr. 10, 114-15.) He alleged that he became unable to work on

January 15, 2005. (Tr. 10.) After his application was denied initially and on reconsideration,

plaintiff requested a hearing, which was held on June 17, 2009. (Tr. 18-56, 59-61, 71-75.) At this

hearing, plaintiff informed the Administrative Law Judge (hereinafter "the ALJ") that he was

seeking a closed period of disability benefits from January 15, 2005 through June 27, 2007. (Tr.

21.) On July 15, 2009, the ALJ issued a decision finding plaintiff not under a disability during

the relevant period as defined in the Social Security Act (hereinafter "the Act"). (Tr. 17.)

The ALJ made specific findings. In her step-one analysis in the sequential disability

evaluation, she concluded that plaintiff had not engaged in substantial gainful activity since the

alleged onset date of January 15, 2005, until June 25, 2007, the end of the closed period. (Tr. 12.)

In step two of her analysis, she concluded that plaintiff had the severe impairment of urticaria –

commonly known as "hives." (Id.) The ALJ discussed some of the medical and factual evidence

beginning at this step in her opinion.

In the decision, the ALJ discusses the tests for allergies plaintiff underwent, before it was determined that his hives were stress-related. (Tr. 13.) Also discussed in the decision are the March, 2006 lab tests revealing significantly elevated thyroid auto-antibodies with relatively normal TSH (thyroid stimulating hormone), potentially indicative of autoimmune involvement. (Id.) The ALJ discussed plaintiff's report in September, 2005, of significant improvement with his symptoms with the use of Zyrtec and Claritin allergy medications, as well as with a regimen later determined to be most effective. (Id.)

In her step-three analysis in the sequential disability evaluation, the ALJ concluded that plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. pt. 404, subpt. P. app. 1. (Tr. 13.) The ALJ also concluded that according to plaintiff's residual functional capacity, he was able to perform "a full range of work at all exertional levels but with the following nonexertional limitations: avoid moderate exposure to extreme cold, extreme heat, and extreme wetness and humidity." (Tr. 13.) The ALJ reviewed more of the medical and other evidence during this determination in the decision (Tr. 14-15).

The decision of the ALJ contained a review of plaintiff's discussion of his symptoms and limitations, including his allegations regarding impairments in "lifting, talking, memory, completing tasks, concentration, understanding, following instructions, and getting along with others." (Tr. 14.) She also notes plaintiff's report of distractibility and irritability when his symptoms were bad. (Id.) The decision reflects plaintiff's reported difficulties with side effects from medications. (Id.) Finally, the ALJ noted that plaintiff "described daily activities which were not limited to the extent one would expect, given the complaints of disabling symptoms and limitations," and noted that in describing his daily activities, plaintiff "indicated that he spends

1    time on the internet, runs errands a couple days a week, works on projects around the house,

2    cooks, cleans and watches television or plays video games ['4 to 6 hours/day']." (Tr. 14, 151,

3    155.)

4            The decision of the ALJ includes a discussion of the medical expert testimony of Dr.

5    Lawrence Sherman, M.D. (Tr. 14, 30-39.) Dr. Sherman "indicated that [plaintiff's] limitations in

6    the workplace would be primarily environmental and he should avoid even moderate exposure to

7    heat, humidity, and extreme cold and wetness." (Id.) The ALJ concluded that Dr. Sherman was

8    the "only medical expert who reviewed the entire medical record, including recent

9    documentation, and his opinion is well substantiated by that record." (Tr. 15.) The ALJ decided

10   to give "significant weight to Dr. Sherman's opinion in evaluating [plaintiff's] residual

11   functional capacity." (Id.)

12          The ALJ also discussed the opinion evidence of Dr. Sukanya Kanthawatana, M.D., Ph.D.,

13   who "indicated that [plaintiff] continue allergen avoidance and environmental control measures."

14   (Id.) The ALJ noted that Dr. Kanthawatana's "treatment records did not indicate that [plaintiff]

15   could not work at all." (Id.)

16          Regarding the medical testimony, the ALJ gave the opinion of plaintiff's naturopathic

17   physician, Dr. Susanne C. Adams, N.D., "little weight." (Id.) The ALJ noted that "Dr. Adams

18   noted that [plaintiff] was unable to work if he had hives, but capable of working if he was

19   completely without symptoms," however, the ALJ furthermore concluded that "Dr. Adams'

20   opinion is unsupported by the medical evidence of record." (Id.) The ALJ concluded that "all

21   exertional activities were not precluded" by plaintiff's hives, even though "there were significant

22   environmental limitations." (Id.) The ALJ also concluded that "Dr. Adams relied primarily on

23   the symptoms and limitations reported by [plaintiff], without any indication of performing an

objective evaluation." (Id.) The ALJ therefore concluded that "the claimant was capable of performing exertional work activities," and further concluded that "the objective medical record does not support limitations to the extent he alleged." (Id.)

Although the ALJ found at step four that plaintiff was unable to perform any past relevant work during the time period at issue (Tr. 15), she also found at step five that plaintiff, given his age, education, work experience, and residual functional capacity, could have performed jobs that existed in significant numbers in the national economy (Tr. 16).

On January 28, 2010, the Appeals Council denied plaintiff's request for review, thus, the ALJ's decision is the final administrative decision subject to judicial review. (Tr. 1-4.) The instant Complaint (ECF No. 1) was submitted to the Court on March 29, 2010.  Plaintiff alleges that the ALJ and the administration erred in denying plaintiff's applications for benefits on the following bases:

1.    The ALJ failed to evaluate properly plaintiff's testimony regarding his symptoms and limitations.

2.    The ALJ erred by failing to evaluate properly the lay evidence.

3.    The ALJ erred by failing to evaluate properly the medical evidence.

4.    The ALJ erred in her assessment of plaintiff's residual functional capacity.

5.    The Commissioner failed to meet the burden of showing that plaintiff could perform any work in the national economy.

6.    The ALJ erred by failing to find that plaintiff was disabled at step five in the sequential disability evaluation.

(See plaintiff's Opening Brief, ECF No. 11, at p. 8.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

<u>STANDARD OF REVIEW</u>

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1113 (9th Cir. 1999) (*citing* <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1432 (9th Cir. 1995)). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); <u>cf.</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (summarizing the five-step sequential analysis).

Pursuant to 42 U.S.C. § 405(g), this court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing* <u>Tidwell v. Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, is less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Magallanes v. Bowen</u>, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* <u>Davis v. Heckler</u>, 868 F.2d 323, 325-26 (9th Cir. 1989)); <u>see also</u> <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995) (*citing* <u>Magallenes</u>, 881 F.2d at 750). However, the Commissioner "may not reject

'significant probative evidence' without explanation." <u>Flores v. Shalala</u>, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting* <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting* <u>Cotter v. Harris</u>, 642 F.2d 700, 706 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." <u>Flores</u>, 49 F.3d at 571.

DISCUSSION

1.      <u>The ALJ evaluated properly plaintiff's testimony regarding his symptoms and limitations.</u>

***Plaintiff's Credibility***

If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ.  <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting* <u>Waters v. Gardner</u>, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing* <u>Calhoun v. Bailar</u>, 626 F.2d 145, 150 (9th Cir. 1980))).  The ALJ also may "draw inferences logically flowing from the evidence."  <u>Sample</u>, 694 F.2d  at 642 (*citing* <u>Beane v. Richardson</u>, 457 F.2d 758 (9th Cir. 1972); <u>Wade v. Harris</u>, 509 F. Supp. 19, 20 (N.D. Cal. 1980)).  An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment.  <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. § 423(d)(5)(A)). Even if a claimant "has an ailment reasonably expected to produce *some* pain; many medical conditions produce pain not severe enough to preclude gainful employment." *Fair*, 885 F.2d at 603 (emphasis in original).

Nevertheless, the ALJ's credibility determinations "must be supported by specific, cogent reasons." <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998) (*citing* <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995)). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" <u>Greger v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006)

1   (*quoting* <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999)); <u>Reddick</u>,

2   157 F.3d at 722 (citations omitted); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996)

3   (citations omitted). The ALJ may consider "ordinary techniques of credibility evaluation,"

4   including the claimant's reputation for truthfulness, inconsistencies in testimony, daily activities,

5   and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed

6   course of treatment." <u>Smolen</u>, 80 F.3d at 1284. "[I]f a claimant 'is able to spend a *substantial*

7   *part* of her day engaged in pursuits involving the performance of physical functions that are

8   transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a

9   claimant's allegations.'" <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1049 (9th Cir. 2001) (*quoting*

10  <u>Morgan,</u> 169 F.3d at 600).

11          Once a claimant produces medical evidence of an underlying impairment, the ALJ may

12  not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of

13  objective medical evidence to fully corroborate the alleged severity of pain." <u>Bunnell v. Sullivan</u>,

14  947 F.2d 341, 343 (9th Cir. 1991) (en banc) (*citing* <u>Cotton</u>, 799 F.2d at 1407).  Absent

15  affirmative evidence that the claimant is malingering, the ALJ must provide "clear and

16  convincing" reasons for rejecting the claimant's testimony. <u>Smolen</u>, 80 F.3d at 1283-84;

17  <u>Reddick</u>, 157 F.3d at 722 (*citing* <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1996); <u>Swenson v.</u>

18  <u>Sullivan</u>, 876 F.2d 683, 687 (9th Cir. 1989)).

19          The ALJ noted in her decision that plaintiff had income consistent with substantial

20  gainful activity in 2005, "over $85,000," and also noted that he left his work after being laid off.

21  (Tr. 12, 22.) Subsequently, the ALJ made a specific credibility determination, and supported it

22  with "specific, cogent reasons." (Tr. 14.) <u>See</u> <u>also</u> <u>Reddick</u>, 157 F.3d at 722. In particular, the

23  ALJ concluded that "[plaintiff's] statements .  .  .  .  are not credible to the extent they are

REPORT AND
RECOMMENDATION - 8

1   inconsistent with the [] residual functional capacity assessment," and noted that plaintiff

2   "described daily activities which were not limited to the extent one would expect, given the

3   complaints of disabling symptoms and limitations." (Tr. 14.) The ALJ also noted that in

4   describing his daily activities, plaintiff "indicated that he spends time on the internet, runs

5   errands a couple days a week, works on projects around the house, cooks, cleans and watches

6   television or plays video games ['4 to 6 hours/day']." (Tr. 14, 151, 155.) Therefore, the ALJ

7   specifically identified what testimony she found to be not credible and what evidence

8   undermined plaintiff's complaints. See Greger, 464 F.3d at 972. The ALJ provided "clear and

9   convincing" reasons for rejecting plaintiff's testimony. See Smolen, 80 F.3d at 1283-84.

11   2.   The ALJ erred by failing to evaluate properly the lay evidence.

12   *Lay Witness Statements/Evidence*

13          "In determining whether a claimant is disabled, an ALJ must consider lay witness

14   testimony concerning a claimant's ability to work." Stout v. Commissioner, Social Security

15   Administration, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing* Dodrill v. Shalala, 12 F.3d 915, 919

16   (9th Cir. 1993)).  Lay witness testimony "is competent evidence and 'cannot be disregarded

17   without comment.'" Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (*quoting* Nguyen v.

18   Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)). Lay testimony as to a claimant's symptoms is

19   competent evidence that an ALJ must take into account, unless the ALJ expressly determines to

20   disregard such testimony and gives reasons germane to each witness for doing so.  Bruce, 557

21   F.3d at 1115; Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); Nguyen, 100 F.3d at 1467

22   (*citing* Dodrill, 12 F.3d at 919). In addition, "where the ALJ's error lies in a failure to properly

23   discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the

24   error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting

25   the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056.

REPORT AND
RECOMMENDATION - 9

On March 31, 2007, plaintiff's wife, Mrs. Sally Califf, (hereinafter "Califf") provided a function report regarding plaintiff (Tr. 141-49.) Califf wrote that plaintiff no longer had the ability to drive, read or work when his symptoms were severe. (Tr. 142, 144, 145.) Califf's statement also indicated that plaintiff's impairment affected plaintiff's lifting, standing, walking, talking, seeing, memory, using hands, completing tasks, concentration, understanding and following instructions. (Tr. 146.) Califf's lay statement includes her opinion that plaintiff had difficulties seeing when the skin around his eyes was swollen, and that plaintiff does not walk when he has bad days. (Id.) However, Califf also indicated that plaintiff "cook[ed] dinner together [with her] everyday;" was able to clean, weed, prune and do household repairs; "wash[] dishes everyday;" and, clean the house and maybe work in the yard three to five hours a week. (Tr. 143.)

The ALJ's decision did not include any reference to the lay evidence provided by Califf. It was legal error to disregard this evidence without comment. See Bruce, 557 F.3d at 1115; Apfel, 236 F.3d at 511; Nguyen, 100 F.3d at 1467. In addition, as the court cannot conclude confidently that "no reasonable ALJ, when fully crediting the [lay] testimony, could have reached a different disability determination," it is appropriate to remand this case to the Administration for further consideration.  See Stout, 454 F.3d at 1056.

3.      The ALJ evaluated properly the medical evidence.

Plaintiff contends that the ALJ's evaluation of the medical evidence constituted legal error because the ALJ failed to discuss Dr. Ferrer's opinion; because the ALJ improperly gave little weight to Dr. Adams opinion; and, because the ALJ erroneously gave significant weight to the opinion of Dr. Sherman.

***Medical Evidence Determinations***

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence.  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).    If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting* Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing* Calhoun v. Bailar, 626 F.2d 145, 150 (9th Cir. 1980))).  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within th[e] responsibility" of the ALJ.  Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 603 (9th Cir. 1999).

"A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with other substantial evidence in the case record." Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (*citing* SSR 96-2p, 1996 SSR LEXIS 9); see also 20 C.F.R. § 416.902 (nontreating physician is one without "ongoing treatment relationship"). However, "[t]he ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004) (*quoting* Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). However, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (*citing*

Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991); Pitzer v. Sullivan, 908 F.2d 502, 506
(9th Cir. 1990)).  Even if a treating or examining physician's opinion is contradicted, that
opinion "can only be rejected for specific and legitimate reasons that are supported by substantial
evidence in the record." Lester, 81 F.3d at 830-31 (*citing* Andrews v. Shalala, 53 F.3d 1035,
1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough
summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and
making findings." Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986) (per curiam) (*citing*
Swanson v. Secretary, 763 F.2d 1061, 1065 (9th Cir. 1985)); see also Magallanes v. Bowen, 881
F.2d 747, 751-55 (9th Cir. 1989).  However, the ALJ "need not discuss *all* evidence presented."
Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam).

        In general, more weight is given to a treating physician's opinion than to the opinions of
those who do not treat the claimant.  Lester, 81 F.3d at 830.  On the other hand, an ALJ need not
accept the opinion of a treating physician, if that opinion is brief, conclusory and inadequately
supported by clinical findings or by the record as a whole. Batson v. Commissioner of Social
Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004) (*citing* Tonapetyan v. Halter, 242
F.3d 1144, 1149 (9th Cir. 2001)); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.
2002) (citing Magallanes, 881 F.2d at 751; Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d
595, 600 (9th Cir. 1999)).  An examining physician's opinion is "entitled to greater weight than
the opinion of a nonexamining physician."  Lester, 81 F.3d at 830 (citations omitted); see also 20
C.R.R. § 404.1527(d).  A non-examining physician's opinion may not constitute substantial
evidence by itself. Id. at 31 (citations omitted). However, "it may constitute substantial evidence
when it is consistent with other independent evidence in the record." Tonapetyan, 242 F.3d at
1149 (*citing* Magallanes, 881 F.2d at 752).  The ALJ "may reject the opinion of a non-examining

physician by reference to specific evidence in the medical record." Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998) (*citing* Gomez v. Chater, 74 F.3d 967, 972 (9th Cir. 1996); Andrews, 53 F.3d at 1041).

The court already has discussed the ALJ's examination of some of the medical and other evidence, including the ALJ's discussion of the medical opinion evidence, see supra, pp. 3-5. (See also Tr. 13-15.) The record also includes plaintiff's March 25, 2007 statement on his function report that when his hives were bad, he "watch[ed] TV or play[ed] video games most of the day." (Tr. 152.) Plaintiff also indicated that he plays games for four to six hours per day, and gardens one or two hours per week. (Tr. 155.) When asked to describe on his function report any changes in these activities since the illness or condition began, plaintiff indicated that "I have too much time to waste on computer and DVDs. I didn't have nearly that much extra time before." (Id.) He does not indicate here any other changes on his ability to garden, work on the house or play games. (Id.)

The court notes examining physician Dr. Kanthawatana's assessment in the record on January 23, 2006 of "[a]cute recurrent" urticaria, as opposed to chronic urticaria, associated with occasional mild angioedema. (Tr. 216.) The court also notes that on Dr. Adams' Physician Statement on June 30, 2005, Dr. Adams indicated as a treatment summary that plaintiff "is improving but still symptomatic - - was severe and now mild reactions." (Tr. 241.)

The court notes that the record includes December 12, 2006 notes by examining physician Dr. Amihan Ferrer that plaintiff "appear[ed] well. Alert and oriented x 3." (Tr. 225.) Dr. Ferrer also noted "scattered urticarial wheals on bilat[eral] arms anterior trunk and bilateral shins and thighs, no signs of infection, no excoriation." (Id.) Dr. Ferrer diagnosed plaintiff with chronic urticaria. (Id.) Although the ALJ did not explicitly discuss this specific evidence by Dr.

Ferrer, she noted that plaintiff "began to experience episodes of generalized urticaria . . . . [and that] [t]his rash was described as small red urticarial lesions with central clearing, with no associated underlying soft tissue swelling." (Tr. 12.) The ALJ also found plaintiff to have suffered from the severe impairment of urticaria. (Id.) Therefore, the court concludes that the decision indicates that the ALJ considered the opinion of Dr. Ferrer, or at least, did not reject said opinion. In addition, the court finds the ALJ's failure to discuss explicitly the opinion of Dr. Ferrer did not constitute legal error. See Vincent, 739 F.2d at 1394-95.

The court also concludes that the ALJ's decision to give significant weight to the opinion of Dr. Sherman, while giving little weight to the opinion of Dr. Adams, also did not constitute legal error. As already discussed, the ALJ considered both the medical opinion of Dr. Sherman, as well as that of Dr. Adams. See supra, pp. 4-5. (See also Tr. 14-15.) She also discussed other medical evidence, and set out a detailed and thorough summary of the facts, including plaintiff's statements, as well as the conflicting clinical evidence. (See Tr. 12-15.) Finally, the ALJ stated her interpretation of the conflicting evidence, by concluding, among other things, that "Dr. Adams' opinion is unsupported by the medical evidence of record." (Tr. 15.) Therefore, the court concludes that the ALJ "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stat[ed] h[er] interpretation thereof, and ma[de] findings." See Cotton, 799 F.2d at 1408. The court also concludes, upon a review of the relevant record, that the ALJ's at least partial rejection of Dr. Adams' opinion is supported by evidence in the record, including plaintiff's statements, the lay evidence and the medical opinion of Dr. Sherman, as well as other medical evidence. (Tr. 12-14, 22, 30-39, 142-46, 151, 155.) Therefore, the opinion of Dr. Adams was "rejected for specific and legitimate reasons that are supported by substantial evidence in the record." See Lester, 81 F.3d at 830-31.

4.      On remand, the ALJ needs to reconsider the issue of residual functional capacity.

Plaintiff contends that the ALJ erred in her assessment of plaintiff's residual functional capacity. However, because this case should be remanded to the Administration for further consideration, including proper consideration of the lay witness testimony, the ALJ may, upon remand, reach a different conclusion regarding the residual functional capacity of plaintiff. Therefore, the Court will not address this concern of plaintiff.

5.      Similarly, on remand, the ALJ should reconsider whether or not plaintiff could perform any work in the national economy.

Although plaintiff contends that the Commissioner failed to meet the burden of showing that plaintiff could perform any work in the national economy, as this case should be remanded to the Administration, the ALJ should be allowed an opportunity to evaluate anew the determination regarding whether or not the plaintiff could perform any work in the national economy.

6.      Likewise, on remand, the ALJ should reconsider whether or not plaintiff was disabled at step five in the sequential disability evaluation.

Although plaintiff contends that it was legal error for the ALJ to fail to find plaintiff disabled at step five in the sequential disability evaluation, as this case should be remanded to the Administration, the ALJ should be allowed an opportunity to evaluate anew the determination regarding disability.

## CONCLUSION

On remand, the ALJ should consider properly the lay witness evidence, which may affect the ALJ's finding at step three. Therefore, for the aforestated reasons, the court should REVERSE and REMAND the matter to the Administration for further consideration, beginning at step three.

1        Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

2   fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P.

3   6.  Failure to file objections will result in a waiver of those objections for purposes of de novo

4   review by the district judge. See 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

5   imposed by Rule 72(b), the clerk is directed to set the matter for consideration on January 28,

6   2011, as noted in the caption.

7        Dated this 7th day of January, 2011.

8

9

10

11   J. Richard Creatura
     United States Magistrate Judge
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPORT AND
RECOMMENDATION - 16